## Barry Brody v. Robert Barasch and the Vermont Board of Psychological Examiners

[582 A.2d 132]

No. 88-575

Present: Allen, C.J., Peck and Gibson, JJ.

Opinion Filed August 24, 1990

*William A. Hunter,* Windsor, for Plaintiff-Appellant.

*John H. Chase,* Office of the Secretary of State, Montpelier, for Defendants-Appellees.

**Gibson, J.** Plaintiff appeals from a superior court judgment affirming a decision of the Appeals Panel denying him a license to practice as a psychologist in Vermont. We affirm.

In the fall of 1984, plaintiff applied to the Board of Psychological Examiners (Board) for a license under 26 V.S.A. chapter 55 as a psychologist-doctorate. The resume he submitted with the application incorrectly stated that he held a Vermont license as a psychologist-master. After an investigation of his background, the Board denied his application on two grounds: first, that he had failed to represent accurately his competence, education, training and experience, and second, that he had improperly attempted to establish a personal relationship with a client.

Plaintiff took an appeal to the Appeals Panel.[1] In April of 1987, the Panel affirmed the Board's denial on the basis of what it found to be six misrepresentations in plaintiff's 1984 resume, but it was "unable to find" that plaintiff had established a personal relationship with a client, and vacated that portion of the Board's order.

During the pendency of the appeal before the Panel, plaintiff instituted the present action, requesting an order that he be seated for the licensing examination, and seeking damages. The Board stipulated that he could sit for the examination pending results of the Panel hearing. After the Panel's decision, he amended his complaint to include an appeal of that decision. The superior court affirmed the Panel's decision and granted summary judgment to defendants on plaintiff's other claims for relief. The present appeal followed.

Plaintiff contends first that the evidence before the Appeals Panel did not warrant denial of his license on grounds that he was "morally unfit" to practice psychology. The argument on

---

[1] The Appeals Panel is established under 3 V.S.A. § 114a to serve all Vermont licensing boards and commissions.

appeal is essentially identical to the argument before the trial court—that the denial may not be based on Dr. Brody's past behavior, but only his present behavior. Plaintiff goes on to contend that in any case there had never been anything false in his resume, and that when requested by the Board he was quick to "clear up any confusion there might have been."

█ Neither argument withstands analysis. In its decision, the superior court concluded that the 1984 resume "mischaracterized certain of appellant's past experiences," noting that a majority of the Panel had concluded that the misrepresentations were material and substantive and "that they revealed a cavalier attitude about the truth and a serious problem in judgment." 26 V.S.A. § 3011(2) provides that an applicant for a psychologist's license must demonstrate to the satisfaction of the Board that he "is not engaged in unprofessional conduct." Section 3016 defines "[u]nprofessional conduct" to include deception in the procurement of a license, false reporting in the practice of psychology, and advertising that has a tendency to deceive the public. § 3016(1), (2) and (3). In discussing this statute, the court concluded:

> That the Board and Appeals Panel applied appellant's conduct against the moral fitness criterion of the statute does not negate the fact that the conduct offends against a fairly rooted conception of morality as well as the obvious spirit and intent of the statute. The state has a legitimate interest in regulating professions in Vermont and there is a rational relationship between the profession of psychology and the regulation here in issue.

The record amply supports the court's conclusion that there was a sufficient connection between plaintiff's misrepresentations and his professional fitness for the Appeals Panel to have concluded as it did. See *Board of Medical Practice v. Perry-Hooker*, 143 Vt. 268, 270, 465 A.2d 291, 292 (1983).

█ As to plaintiff's argument that the misstatements went at most to "past character," the court stated that "[i]t is difficult to imagine what could be more current than the application itself." We agree. Plaintiff's interpretation of past and present

would relegate to the past virtually any conduct that does not occur in the Board's presence. Such a limitation is not contemplated by the statute. *In re Monaghan*, 126 Vt. 53, 222 A.2d 665 (1966), does not support plaintiff's position. In that case, the applicant for admission to the Vermont Bar had stopped his excessive drinking, and several years had passed without conduct that was criminal or morally reprehensible, thus showing there had been an improvement in character. *Id.* at 65–66, 222 A.2d at 675. In the present case, the misstatements occurred in plaintiff's current application, and he only corrected the record after the misstatements in his resume had been uncovered during the Board's investigation. Again, the record supports the court's conclusion.

Plaintiff next contends that his due process rights were violated because of a lack of notice of charges against him, and because the Appeals Panel was a "body with a flawed structure." Plaintiff applies his notice argument to both the Board's initial decision and to the hearing before the Appeals Panel. His argument that he was not notified or allowed to appear at the meeting of the Board at which his application was initially denied is without legal support. The psychologists' licensing statute, 26 V.S.A. chapter 55, like other licensing provisions in Vermont,[2] does not provide for notice or an opportunity to appear before the licensing board prior to the board's initial decision on licensure. This statutory process is in accord with constitutional principles; an applicant's due process rights are protected if he has due notice of the Board's decision and an opportunity to appeal. See *Charry v. Hall*, 709 F.2d 139, 146 (2d Cir. 1983) (applicant for psychologist's license was not entitled to evidentiary hearing as part of the state's administrative review of his application); *Lock v. New York State Educ. Dep't*, 102 A.D.2d 979, 980, 477 N.Y.S.2d 783, 786 (1984) (mem.) (no due process right to appear before the review committee or have an evidentiary hearing in connection with license application; review procedure provided complied with criteria for constitutionality where applicant had ample opportunity to submit

[2] See, e.g., 26 V.S.A. ch. 3 (architects), ch. 13 (dentists), ch. 20 (engineers).

written proof of his qualifications), *appeal denied,* 64 N.Y.2d 604, 485 N.Y.S.2d 1029 (1985); see also *Mathews v. Eldridge,* 424 U.S. 319, 343 (1976) ("ordinary principle, established by our decisions, [is] that something less than an evidentiary hearing is sufficient prior to adverse administrative action"). See generally Friendly, *"Some Kind of Hearing,"* 123 U. Pa. L. Rev. 1267, 1295–1304 (1975). Ample opportunity for administrative and judicial review after the initial decision is provided under 3 V.S.A. § 114a(d) and (g), the Administrative Procedure Act (3 V.S.A. ch. 25), and the Vermont Rules of Civil Procedure. This review process is adequate to satisfy the demands of due process.

■■ As to his procedural rights before the Appeals Panel, the Board wrote plaintiff on March 7, 1986, notifying him of the denial of his application and the reasons therefor.[3] The record is clear that both plaintiff and his attorney understood the issues prior to consideration by the Appeals Panel and could have presented any witnesses they felt would be relevant and helpful. Plaintiff's attorney stated at the commencement of the June 20, 1986 hearing:

> Well, as, I think we—I mentioned some of the issues last time and apparently everyone agreed that it is going to be a de novo hearing on the licensing issue, whether [plaintiff] is in fact entitled to his license or not. I think that [the attorney for the Board] and I have come to some sort of understanding, at least, on what issues we are going to be talking about here today.

Thus, the record does not sustain plaintiff's contention about a lack of notice. See *In re Matthews,* 94 N.J. 59, 74, 462 A.2d 165, 172 (1983) (claim by applicant for bar admission that he lacked notice of grounds on which his fitness was to be reviewed was harmless where counsel conceded that he was aware of issues in dispute). Moreover, plaintiff never raised the issue of inadequacy of notice at trial and hence waived that issue. *Hinckley v. Town of Jericho,* 149 Vt. 345, 346, 543 A.2d 260, 261 (1988) (objections about notice of the hearing and procedures followed

---

[3] The notifying letter was not introduced into evidence, but plaintiff does not take issue with the State's representation of its contents.

were not made before administrative body and were thus waived).

Plaintiff also assails the makeup of the Appeals Panel as unconstitutional. The Panel is composed of five members: three permanent and two ad hoc. One of the permanent members is the secretary of state or his designee; the other two permanent members are appointed from the public by the governor. The two ad hoc members are "appointed by a board chairman to sit when matters pertaining to . . . licenses . . . within the initial jurisdiction of his board are being considered by the panel." 3 V.S.A. § 114a(a).

Plaintiff claims that the appointment of the two ad hoc members by the chair of the Board violates his constitutional protections. It is plaintiff's burden to show by clear and convincing evidence that the challenged statute is unconstitutional. *Heaton Hosp., Inc. v. Emrick*, 128 Vt. 405, 408–09, 264 A.2d 806, 809 (1970); *State v. Auclair*, 110 Vt. 147, 156, 4 A.2d 107, 111 (1939). In order to sustain his argument, plaintiff must overcome a presumption in favor of the honesty and integrity of the panel members. See *Withrow v. Larkin*, 421 U.S. 35, 47 (1975). Indeed, this Court presumes that actions of an administrative body are valid, unless shown by clear and convincing evidence to be otherwise. *In re Young*, 134 Vt. 569, 570–71, 367 A.2d 665, 666 (1976). Further, there is a presumption that government officials will decide a controversy conscientiously and fairly, even though they may have been previously involved in an earlier stage of the proceeding. *Boston v. Webb*, 783 F.2d 1163, 1166 (4th Cir. 1986); see *State Dep't of Taxes v. Tri-State Industrial Laundries, Inc.*, 138 Vt. 292, 296, 415 A.2d 216, 219 (1980) (although due process imposes some limits on multiplicity of functions by individuals in contested case, it does not limit multiplicity of functions by agency in toto). At the same time, we recognize that "to perform its high function in the best way 'justice must satisfy the appearance of justice.'" *In re Murchison*, 349 U.S. 133, 136 (1955) (quoting *Offutt v. United States*, 348 U.S. 11, 14 (1954)); see *Richard v. Richard*, 146 Vt. 286, 288, 501 A.2d 1190, 1191 (1985) (disqualification of a judge is required "whenever a doubt of impartiality would exist in the

mind of a reasonable, disinterested observer"). Nevertheless, the burden of establishing disqualification rests with the challenging party. *Schweiker v. McClure*, 456 U.S. 188, 196 (1982).

■ Plaintiff has not shown the ad hoc members of the Board to have an institutional bias—that is, that they had participated in an earlier stage of the proceeding or had served the Board in any capacity. Further, there is no suggestion by plaintiff that the Board itself was biased against him. Rather, plaintiff makes general assertions that because they were appointed by the Board's chair, the ad hoc members would be reluctant to disagree with the decision of the Board, and thus disposed to rule against him. Plaintiff offers no proof in support of his assertions. Such assertions, by themselves, do not provide a sufficient basis on which to invalidate the statute. See *Schweiker*, 456 U.S. at 196 n.10.

■ Nor has plaintiff made any showing of actual bias or prejudgment on the part of the ad hoc members. Although plaintiff claims that a remark made by one of the ad hoc members during the hearing demonstrated bias, plaintiff's motion to disqualify the member was denied. The superior court addressed this issue in detail, concluding that the remark derived from the evidence before the Panel and that plaintiff had not established bias or prejudice on the part of the member. Plaintiff has taken no appeal from this ruling, and presents no grounds on which to overcome the presumption of honesty and integrity that attaches to the actions of the panel members as adjudicators. His due process claim must be rejected. *Withrow v. Larkin*, 421 U.S. at 47, 52; *Boston v. Webb*, 783 F.2d at 1166; *Smith v. Sorensen*, 748 F.2d 427, 436 (8th Cir. 1984).

Plaintiff next contends that the statutory prohibition against "moral unfitness to practice psychology" (26 V.S.A. § 3016(10)) is unconstitutionally vague. It is a basic principle of due process that a statute is void for vagueness if its prohibitions are not clearly defined. *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). A statute must be sufficiently clear to give a person of ordinary intelligence a reasonable opportunity to know what is proscribed. *Id.*; *State v. DeLaBruere*, 154 Vt. 237, 271, 577 A.2d

254, 272 (1990); *State v. Cantrell*, 151 Vt. 130, 133, 558 A.2d 639, 641 (1989). Although the term "moral unfitness" is undefined, this does not necessarily render it unconstitutionally vague. To make a statute sufficiently certain to comply with constitutional requirements, it is not necessary that it detail each and every act or conduct that is prohibited. *Orlando Sports Stadium, Inc. v. State ex rel. Powell*, 262 So. 2d 881, 884 (Fla. 1972). Thus, any board or body whose duty it is to pass upon the qualifications of licensees of the various professions—law, medicine, psychology, or others—must do so by applying some broad and necessarily general standards. Statutory language that conveys a definite warning as to proscribed conduct when measured by common understanding and practices will satisfy due process. *Id.*

 The Board found that plaintiff's failure to represent accurately his competence, education, training and experience failed to meet the statutory standard. The Appeals Panel concluded that plaintiff's submission of misleading, exaggerated and misrepresentative statements about his career and background amounted to moral unfitness, because they revealed "a cavalier attitude to the truth and a serious problem in judgment." Honesty and integrity are essential attributes of good character, see *In re Monaghan*, 126 Vt. at 66, 222 A.2d at 675, particularly in a profession such as psychology where truth is a necessary ingredient in the providing of service to the consumer. We conclude that the statute is sufficiently clear to inform the ordinary person that honesty and truthfulness are required attributes of one who desires to be licensed as a psychologist. The statute is not unconstitutionally vague.

 Plaintiff raises on appeal for the first time the issue that the trial court relied on and referred to a transcript of the Board's March 15, 1985 meeting, which had not been provided to plaintiff. A decision of the trial court was entered on July 31, 1987, and plaintiff filed a notice of appeal. The appeal was premature, since the July 31, 1987 order was interlocutory only, and the appeal was dismissed. But the decision referred to did provide plaintiff with notice of the transcript to which he now objects, and after the dismissal of his appeal the case remained

on the docket of the Rutland Superior Court for approximately nine months. During that time two conferences were held, and defendants' motion for summary judgment was filed and granted. At no time did plaintiff bring the asserted irregularity to the attention of the court. He thus waived the issue and may not now raise it for the first time on appeal.

*Affirmed.*