## State of Vermont v. Wanita L. Oren

[647 A.2d 1009]

No. 93-337

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed July 1, 1994

*Jeffrey L. Amestoy,* Attorney General, and *David Tartter,* Assistant Attorney General, Montpelier, for Plaintiff-Appellee.

*Charles S. Martin* of *Martin & Paolini, P.C.,* Barre, for Defendant-Appellant.

**Allen, C.J.** Defendant Wanita Oren appeals her conviction following a jury trial for hindering a law enforcement officer, 13 V.S.A. § 3001. We affirm.

Around 6:00 in the evening of February 8, 1989, a Washington County deputy sheriff went to the Northfield home of defendant and her husband to serve civil process. The deputy was not wearing a uniform and drove an unmarked Sheriff's Department cruiser. She was accompanied by her fourteen-year-old son. The deputy proceeded past the gate at the entrance to defendant's farm and down the access road to the dooryard just outside the house. Defendant drove up in a pickup truck and parked so to block the deputy's exit, and then ran toward the deputy's car. Screaming obscenities, defendant accused the deputy of trespassing and demanded identification. The deputy explained that she was there to serve process on defendant and her husband, and produced her badge and identification. Defendant tried to grab the badge, and told her husband to call the Northfield police. Defendant then went into the house. The deputy became fearful and tried to maneuver around defendant's truck, but succeeded only in getting her car stuck in a snowbank. Defendant then reappeared, screamed accusations that the deputy had hit her truck, and pounded on the hood and windshield of the cruiser.

The police arrived one-half hour later and helped the deputy extricate the cruiser. The deputy followed the police out the driveway, stopping before she reached the road. She placed the papers on the ground and announced that the Orens had been served. Defendant drove up from behind, ran to the cruiser, and as the deputy was driving through the gate, defendant pushed the gate, hitting the side of the cruiser. Defendant then jumped on the hood of the cruiser and refused to get down. The deputy slowly drove through the gate, and defendant slid off the hood.

Defendant originally was charged with two counts of impeding a public officer, 13 V.S.A. § 3001, and one count of simple assault on a police officer, 13 V.S.A. §§ 1023, 1028. All three counts were dismissed for lack of probable cause. The State appealed, and this Court reinstated the two counts of impeding a public officer. See *State v. Oren*, No. 90-213 (Vt. Nov. 9, 1990). The count alleging that defendant had impeded one of the Northfield police officers was dismissed before trial, and defendant subsequently was convicted of hindering the deputy in serving process.

Defendant then moved for and was granted a new trial, based on newly discovered evidence that the deputy's commission as deputy

sheriff had expired at the time of the incident, which meant that she was not a public officer for purposes of 13 V.S.A. § 3001. Based on this evidence, defendant moved to dismiss, alleging that the State could not prove a prima facie case. The motion was denied, defendant appealed, and this Court affirmed, ruling that despite the lapsed commission the State could make its case based on the de facto public officer doctrine. See *State v. Oren*, 160 Vt. 245, 248, 627 A.2d 337, 339 (1993). In light of this ruling, the trial court reconsidered its order granting a new trial and rescinded the order, thereby reinstating defendant's conviction on one count of impeding the deputy.

On appeal, defendant alleges five errors: (1) the information and affidavit do not state an offense for which she could be convicted; (2) she committed no acts, illegal or otherwise, that hindered the deputy in serving the civil process, and that the deputy was not performing a law enforcement function; (3) application of 13 V.S.A. § 3001 under the facts of this case renders the statute unconstitutionally vague and unenforceable; (4) the trial court erred by admitting evidence of defendant's conduct after process had been served; and (5) the trial court erroneously prohibited defendant from demonstrating that the deputy was not authorized to serve process.

## I.

Defendant's first claim of error rests on an alleged absence of an illegal act for a violation of 13 V.S.A. § 3001. Section 3001 provides that "[a] person who hinders an executive, judicial, law enforcement, civil or military officer acting under the authority of this state or any subdivision thereof shall be imprisoned not more than three years or fined not more than $500.00, or both." "Hinder" means "'to slow down or to make more difficult someone's progress towards accomplishing an objective; to delay, or impede or interfere with that person's progress.'" *State v. Oren*, slip op. at 1 (quoting *State v. Dion*, 154 Vt. 420, 423, 578 A.2d 101, 103 (1990)). Such interference must be action that a defendant does not have the legal right to take. *Dion*, 154 Vt. at 424, 578 A.2d at 103.

Factually, this case resembles *State v. Dion*, in which the defendant had been charged with hindering a state game warden from citing a boy for a fish and game violation. *Id.* at 421–22, 578 A.2d at 102. In threatening language, Dion and another individual had told the warden to leave the boy alone. Dion warned the warden that he was on his territory and that he would "get [the warden's] ass good." There was no physical contact between the defendant and the

warden, but the defendant tried to pull the boy from the warden's grasp. Moreover, the warden felt threatened enough to call for assistance in bringing the situation under control. On appeal, Dion complained that the State did not provide sufficient evidence that he had no legal right to act as he did. We disagreed, and held that testimony that the defendant had physically interfered with the warden's actions and had used "'fighting words'" sufficed to prove the charge. *Id.* at 425–26, 578 A.2d at 104.

■ As in *Dion*, the evidence in this case demonstrates that defendant verbally menaced the deputy and made threatening gestures from the moment she arrived to serve process. If anything, defendant became more belligerent after the deputy identified herself, her son, and her reason for being on defendant's property. The evidence shows that the deputy reasonably believed she could not carry out her duty without risk of harm to herself. In our earlier ruling reversing the trial court's dismissal of the hindering charge, this Court held that "[t]he record in the present case amply supports a finding of probable cause that defendant hindered a law enforcement officer in violation of 13 V.S.A. § 3001." *State v. Oren*, slip op. at 1. The more complete trial record reinforces the conclusion that defendant acted without legal right to impede the deputy in the performance of her duty.

## II.

■ Defendant next argues that nothing she did actually hindered the deputy from serving process. She argues that banging on the car did not prevent the deputy from discharging her duty, and that her refusal to move the truck after she had blocked the deputy's car amounted to a refusal or unwillingness to act, not an affirmative act. The evidence shows, however, that the deputy intended to serve the Orens without delay and then leave the premises, but that defendant and her husband put her in fear for her own safety and the safety of her son, and prevented her from leaving or acting until help arrived from the Northfield police. As the above cited definition of hindering illustrates, § 3001 does not require that a defendant make the officer's performance of duty impossible; it is enough that defendant intentionally impeded the deputy's accomplishment of her task.

■ We also find no merit to defendant's claims that the conviction cannot stand because the deputy was not performing a law enforcement function in serving civil process. It is undisputed that the deputy

was a certified law enforcement officer at the time of the incident. Under 24 V.S.A. § 309, "deputies may, and when required, shall perform any official duty which may be required of the sheriff." By statute, a county sheriff has the duty to "serve and execute lawful writs, warrants and processes directed to him . . . and [to] do all other things pertaining to the office of sheriff." *Id.* § 293. The hindering statute requires only that an individual be hindering a law enforcement officer "acting under the authority of this state." 13 V.S.A. § 3001. Thus, liability is not based on whether that officer was performing a "law enforcement function," but only, as was the case here, that a law enforcement officer be acting under state authority.

### III.

■■ Defendant also argues that application of 13 V.S.A. § 3001 under the facts of this case renders the statute unconstitutionally vague. She relies on the trial court's dismissal of the simple assault count for lack of probable cause, and contends that a reasonable person could not determine what would constitute a violation of § 3001 if a violation can be founded on something less than simple assault. To survive a void-for-vagueness challenge, a statute need not "detail each and every act or conduct that is prohibited." *Brody v. Barasch*, 155 Vt. 103, 111, 582 A.2d 132, 137 (1990). The statute need only "be sufficiently clear to give a person of ordinary intelligence a reasonable opportunity to know what is proscribed." *Id.* at 110, 582 A.2d at 137. The facts of this case incontrovertibly demonstrate that defendant continued to threaten the deputy even after discovering that she had come onto defendant's property as a deputy sheriff in order to serve legal process. Defendant's actions far exceeded a reasonable response to the circumstances, even had she reasonably perceived a threat to herself or her property when the deputy first arrived. As applied to the facts in this case, a person of ordinary intelligence should have understood that such behavior interfered with the officer's discharge of her duty. Therefore, defendant cannot complain that § 3001 is unconstitutionally vague as applied.

### IV.

■ Defendant next contends that the trial court erroneously admitted evidence of her conduct after service had been effected, and that this conduct could not be presented to establish the illegal conduct element of § 3001. At trial, defendant claimed she acted in

self-defense in response to an apparent threat from two individuals in an unmarked vehicle who had come onto her property after dark. The State introduced evidence of post-service conduct to establish that defendant did not act reasonably even if she acted in self-defense, especially after the deputy had identified herself as a deputy sheriff and the Northfield police officers had corroborated the identification. The trial court specifically instructed the jury that evidence of post-service conduct could not be factored into a determination of whether the deputy had been hindered, but only to resolve the issue of defendant's state of mind. The evidence was relevant, and the court acted to ensure that it would not be used improperly. The trial court did not abuse its discretion in admitting it. See V.R.E. 104(a) (trial court determines admissibility); *State v. Searles*, 159 Vt. 525, 529–30, 621 A.2d 1281, 1284 (1993) (circumstances surrounding an alleged offense admissible to promote jury understanding of events).

## V.

Finally, defendant alleges that the trial court improperly curtailed cross-examination of the deputy on the issue of whether she was authorized to serve process. At trial, defendant sought to establish that the deputy acted beyond the scope of her duties as a part-time deputy sheriff, and that, acting without authorization in serving process, she was not discharging a law enforcement duty within the meaning of 13 V.S.A. § 3001. Regarding the first part of this claim, in an interlocutory appeal in this same case this Court held that the deputy, as a de facto officer, had the authority to act as a deputy sheriff and serve process on the Orens. *Oren*, 160 Vt. at 248, 627 A.2d at 339. As to the second part of this claim, we have determined that it is enough that the deputy was acting under state authority. Since both of defendant's arguments on this point turn on questions of law, the trial court did not err in limiting defense counsel's inquiry into factual matters on cross-examination.

*Affirmed.*